My name is Dennis Boyle, and I represent the appellant, Nicholas Konopick. I wish to reserve three minutes for rebuttal. This case arises out of a domestic relations issue litigated in Perry County. Specifically, a hearing into whether a post-nuptial agreement, a separation agreement, should be set aside. At that hearing, Mr. Konopick's counsel did not call four witnesses who would have testified that his ex-wife had full disclosure. And he knew about that because Mr. Konopick told them. That's correct, Your Honor. He knew about that. Mr. Konopick had told him about that. The hearing was actually held on August 2, 2004. On July 7, 2005, the Honorable Kathy Morrow of the Court of Common Pleas set aside the agreement. As a result, Mr. Konopick ended up losing approximately $1.8 million. As I understand it, you know, I find in the Pennsylvania law some mixing up of the concept of discovery, tolling, rightness, and so forth. To me, tolling would be, I know, I have a suit, I'm going to bring it. God, there's a stay, an automatic stay in bankruptcy, and I can't. So I think that's tolling. That's toll, because until I'm not going to go into court, get permission, all that. But then the question here was what, when the cause of action occurred? Yes, I think Pennsylvania is a bit unique when it comes to states. I went to law school in Maryland. I actually wrote my law review article on the statute of limitations. Pennsylvania uses an accrual statute that actually causes the statute of limitation to run even before an injury is suffered at times, which is sort of the circumstance here. That's sort of compensated by the discovery rule, which then stays the statute of limitations, or tolls the statute of limitations until such time as the person becomes aware of the injury and the cause of this injury. You represent Mr. Konopick, right? That's correct. And Mr. Konopick was at the hearing at which counsel didn't call the four witnesses that he had suggested that they call, right? That's correct, Your Honor. So Mr. Konopick knew at that time that counsel didn't provide evidence that Mr. Konopick had advised his wife, his then wife, of his assets accurately, right? That's correct, Your Honor. Okay. So why isn't that the beginning of the statute of limitations for malpractice? Since he saw, he knew that the lawyers didn't do that which he thought they should have done. It turned out he was right. It did turn out he was right and his lawyers were wrong, Your Honor. That's right, but the question is when the cause of action arises, right? That's correct, Your Honor. The malpractice. And he knew at that time. So why shouldn't it arise then? Well, he knew that the witnesses were available and he knew the witnesses were not called. As he indicated in his affidavit, though, he had been told by his attorneys, number one, that the hearing was not that big a deal, number two, that Judge Morrow was going to rule in his favor, and number three, that these witnesses were unnecessary for him to carry the burden of proof. This is not an unknowledgeable plaintiff. I mean, he had a million point eight in assets that he didn't disclose, right? So he was, I guess, a businessman, so he knew that lawyers can't tell what judges are going to do. No, that's correct, Your Honor. But I think in the practice of law, attorneys who litigate cases frequently, it's not uncommon for me when I'm doing a case to have a client come to me and proffer a number of witnesses, and I will tell the client which witnesses should be called and which ones shouldn't be called. And I think one of the reasons why we hire lawyers, or why people hire lawyers, is for that expertise. I hope you wouldn't tell the client, well, if we don't call these, it's all right, because the judge is going to come out in our favor. I can't recall having ever said that, Your Honor. All right, good, because you're a good lawyer. It won't be sued for malpractice. Isn't your argument that, look, no matter how the Connelly office was handling the case, until there was a ruling against Nopik, maybe the judge will rule in his favor. In that event, he could have filed a suit that's pending, and what would you do? I mean, you would have filed an unnecessary suit that he's not been injured. And therefore, since he's not been injured, I usually think in terms of an injury going with the negligence and the combination of the negligence and the injury gives you your cause of action. But until the judge ruled, there was no injury, was there? I would agree that there was not an injury. I think that what's significant on that point is nobody knew how the judge was going to rule. Mr. Conopik's attorney did present evidence at the case, and that evidence may very well have been sufficient to uphold the post-nuptial agreement itself. I thought the best case for you was that the date would be the date of the letter from Downey to Connelly as the discovery date of when your client had a cause of action. Is that not right? Well, certainly we think that the discovery rule, obviously. Right. We think that Mr. Conopik could not have known of the cause of the injury or the injury itself, at least until the decision came out from Judge Morrow. What would have happened? Suppose he filed the suit the day after the trial, the hearing. Okay. He should have called those witnesses on suing. He sues them. And that case now comes up. It's a fast docket wherever it is, and the judge still hasn't ruled. What would the judge do at that point? I guess if the cause of action arose when they didn't call the witnesses, I guess if I were the judge, I'd say, I think I'll stay in this case and see what happens. I don't know. I think the case could be stayed. I think if the case proceeded to a prompt resolution, the conclusion one would have to come to is that damages at that point would be speculative, or that since no damages have been suffered yet, there's no tort that's occurred yet. Isn't the malpractice cause of action when the malpractice happens, which in this case would be the case against Conley, would be when they didn't call witnesses, didn't even investigate the witnesses as far as I can tell, at the trial? To answer that question as honestly as I can, I think there's a lot of inconsistency in the Pennsylvania cases as you read them. Not only in this field. I think if you look at Fine v. Checchio, which is a Supreme Court case from 2005, the language that's used is the cause of action begins to run when the person knew the injury, by what cause, and at what time the injury was inflicted. But we're focusing on Downey today anyway, aren't we? We are. Yeah, but to focus on Downey, you've got to look at Conley. That is correct, because it was Conley's negligence that triggered the malpractice case. The question is, when did that injury occur, or when was that injury discovered? I think if the injury was just- That confused me too, because the word discovery wasn't really, means like, you know, I didn't realize it came to the medical malpractice. It came in the Jersey case, where unfortunately they thought that the plaintiff was knocked out completely, and she overheard the surgeon in the second operation saying to the students, this is what happens when the surgeon goes out for a coffee break during the operation. And that's when she knew something was wrong. I think that was called the Lopez case. But in this case, though, it's a very- If Conley, if the cause of action was already barred, still, maybe on a contract theory, it wasn't. He still had an obligation to sue. Is that what you're saying on the contract? But I thought malpractice is tort under Pennsylvania law. We have pursued this case as under a tort theory and not a contract theory. Are you abandoning the claim for a contract, so we're only doing it for two years? I am, Your Honor, in all honesty. So what is Mr. Downey's defense that he presents to this court? What is Mr. Downey's defense? Yeah, that's right. In terms of the statute of limitations?  I think- I'm Mr. Downey, the appellee, Your Honor, perhaps would be better- That's okay. Okay. I'm asking him, though. Mr. Downey raised the statute of limitations defense in a footnote in his brief. Mm-hmm. The court then concluded that this cause of action had actually- that the statute of limitations had actually run before- Had run. Mr. Downey was involved in the case. Okay. That was based upon a- And what was wrong with that, what the court ruled? I think the court ignored the discovery rule in this particular case. I think the court was too strict in determining that the accrual occurred at the hearing. So you're saying that if, in fact, the statute of limitations ran when the common pleas judge, I guess, set aside the settlement, that you sued within two years of that? That's correct. Yeah, certainly we sued- You sued Downey within two years. We sued Mr. Downey for a failure to file within two years of the date that the malpractice occurred. You sued Downey in a timely way if the statute- You sued Downey timely. And Downey should have sued because he had- measured from the judge's ruling setting aside the verdict. That is our position, Your Honor. Yeah, it's just throwing out the case. Setting aside the settlement agreement. Setting aside the settlement agreement. Okay, so you're making it into a rather simple question. I believe it is a simple question. You're either up or down with it, but either way, it's not that complex. I think that's true. I think that the discovery rule is the issue in the case. I think that's what the court of common pleas failed to take into account. When was the relationship between Knoppeck and Downey? When did you think it was? The relationship, Mr. Downey, according to the facts as pled in the affidavit with Mr. Knoppeck, first met on July 28, 2006. And how many- what was the period available to file a suit in that, assuming that? Assuming that the period available to file a suit would have been- Four days? Six days, I believe. Oh, all right. We're not- I thought that if you used the discovery rule, you'd go July 7th of 2005, tort theory, until July 7th of 2007. Your client engaged Mr. Downey within that period of time. That's correct. And the engagement you can define either on the day that Mr. Downey sent the lawyer's letter or on the day that the retainer was signed, either of which date falls within the July 5th of 2007- of 2005 until July 7th of 2007. So the claim is still timely. He's retained under either theory. That's right. And a suit was not brought. That's correct. And I apologize for the confusion. When I answered Judge Sloviter's question, I was answering that premised upon no discovery rule. Had there not been a discovery rule, there would have been six days. Right. With a discovery rule, there would have been an abundance of time. I see that I'm out of time. Thank you. Thank you. Thank you. May it please the Court, Phillip Downey on behalf of Appellee Phillip Downey. Perhaps it would be of some assistance if I clarified- You can step back a little bit, as long as-no, I mean from the mic. How's this? It was coming out. That's perfect. Perhaps it would be of more assistance. In any case, perhaps it would be of assistance if I clarified the parties involved here. We have- I think we know-we have read-we read the briefs in this Court. Okay, very good. Unlike some of the State Supreme Courts. It wasn't clear from some of the questions I was hearing. No. In any case, though- We know we're dealing with Knoppe, Connolly, and Downey. That's correct. Okay. We know that. The law in Pennsylvania, there is no dispute. The law in Pennsylvania with regard to legal malpractice cases is that the occurrence rule applies. And the occurrence in this case was on August 2, 2004, when witnesses whom Mr. Knoppe had instructed the Connolly defendants to call were not called. Now, as you may recall, this case involves a post-nuptial agreement which Mr. Knoppe alleges that for the sum of $60,000, he settled all claims that his wife might have against- Yeah, we know. And we know that ultimately you have to pay $1.8 million. Let's get to the issue before- Certainly. In any case, the alleged malpractice of the Connolly defendants was clear and evident to Mr. Knoppe on August 2, 2004. There is no evidence whatsoever- You know, it's funny you should say that because initially when you got the case in against Connolly, it was more than two years after August 2, wasn't it? I never filed suit. No, when you got the case in against Connolly- Yes. It was more than two years after the settlement agreement hearing. That is correct. It didn't occur to you at that time that, wait a second, this has got to be too late because it's more than two years, so I'm afraid I can't help you. No, Your Honor. Pennsylvania recognizes a cause for legal malpractice in contract which has a four-year statute of limitations. So he just abandoned that. That's correct. So you thought it was within time. That's correct, Your Honor. Why did you change your mind? I changed my mind not so much as to the time, but because Mr. Knoppe could not produce the documentation and evidence I needed to go forth with the case. Moreover, Al Momgian wrote a letter saying he saw no legal malpractice. I thought the record showed that you said that you didn't pursue the case because you got it too late. No, that's not my record, Your Honor. Momgian was called in by you after the two years. That's right. You need an expert for a breach of contract case as well in legal malpractice. Moreover, Pennsylvania requires a certificate of merit before you can file suit. New Jersey does. Is Pennsylvania also? Pennsylvania also. But he saw you within two years of the judge's ruling in the state court setting aside the agreement. He saw me contrary to what was stated here today. If you look at the complaint, which is when he saw me, he saw me on July 30th. He spoke with me with regard to possible malpractice. I told him there was nothing I could do on his behalf. And if I may, this factual record has been waived by the appellants. It was never argued at the trial level before Judge Rambo. They brought up nothing. In fact, Judge Rambo, they brought up nothing with respect to when the relationship, the representation started. In fact, there's no argument on that whatsoever until they filed their appellate brief. Therefore, the argument's waived. Which argument is this? That would be the argument as to when the representation started. Judge Rambo was under the impression that it started after that date. They had an opportunity. She treated it as having begun in March 2007. That's when she treated it, yes. That's wrong. That is incorrect. It's prior to that. What is the indicia? Wait a second. I'm really getting confused here. No, go ahead, please. When did Nopik first engage you for this malpractice? Nopik and I first spoke of the malpractice on July 30th. Of what year? Of 2006. And when did the judge rule? The judge ruled on July 5th of 2007. I agree with you. You could certainly say your relationship began in July 2006. I thought she ruled on July 7th of 2005. The judge ruled on July 7th, 2005. Excuse me. Which judge are we talking about? The state judge. The state judge. That's correct. He had conferred with you within two years of that date. He conferred with me not within two years of that date. Yes, that's correct. The date of the state decision. That's correct. That's right. But Pennsylvania, again, the occurrence rule controls. Unless there's evidence of fraud or concealment, which there's not here. But if we found that in going through the cases that the cause of action did not begin to run until the judge ruled, then would he, the suit against you, the suit at that point, you could have brought it within two years. If that was the rule. If that was the ruling, yes. That's correct. You're saying that's not the rule. That's correct. He says it is. That's right. And that's why we're here. Thank you, Your Honor. It's not like at one time I really saw it happen. I had said to two lawyers, well, if you can't agree with this, how do you expect me to decide? But it was decided. Okay. Go ahead. Any further questions? No. You can continue. You still have things. I assume you still have things to say. Certainly. Again, plaintiff has cited to the case of. You've said that under Pennsylvania law the occurrence rules apply and that the cause of action would have accrued on August 2nd of 2004. That's correct. Okay. Explain for me why the discovery rule cannot apply. Because you're not saying it should not apply. You're saying it cannot apply. It cannot apply in this case. In order for it to apply, there must be evidence of fraud or concealment. So let's go over what happened, the facts of the case. Mr. Dompik told the attorneys, purportedly told the attorneys, to call several witnesses. I'll name two of the witnesses he told them to call who were not called. He ordered his attorneys to call Carl Wass, who was his former wife's former attorney. Four witnesses, we know. Yes. Help me with this. And that's what I'm trying to do here. We're on top of the facts. Here's what I don't understand. That would mean that for any claim at any time with regard to malpractice, the claim would have to accrue at the moment the attorney and the client had some disagreement, right? Because under the facts as I understand them, the conversation between Connolly and Dompik, or Cadell, actually, on the day of the hearing, and Dompik, trying to assuage his concern about not having called the four witnesses, that happens every day in courtrooms around the country. No, I'm not going to call witness X because whatever, okay? And witness X is not called. That would mean in those suits everywhere around the country, that would be the start point of any kind of malpractice claim. Not as stated, Your Honor. Okay. Not as stated. What happened is that they did not discuss who would they, she did not discuss with them at the case, I'm not going to call this person for X reason. She simply did not. That is where it was obvious that malpractice had occurred. Obvious to whom? As to Mr. Dompik. So lay witnesses in this situation across the country are to know, I told my client to call X. She didn't. So I've got a malpractice claim because she didn't call. I didn't lose yet. I could have won on July 7th. In Pennsylvania, that's the law, the occurrence rule, unless there's fraud or concealment. The person has to sue before they're injured. Conceivably, yes. And they may never be injured. Conceivably. But that is the law in Pennsylvania. Yes, ma'am. Well, there's some question. Oh. I don't know. In the case relied upon by appellant, fine is not a legal malpractice case. That's a medical malpractice case. A dentist. Correct. In legal malpractice cases only, as far as I know, the occurrence rule is the controlling rule. What did Judge Rambo say about the case against you, the malpractice? The reason you won. She didn't reach that issue. Remember, she ruled motion for summary judgment. She granted my motion for summary judgment. Why? Because the suit, because Nicholas Konopic had not filed suit within two years of August 2nd, 2004. And she held that the discovery rule did not apply, the occurrence rule control. The suit against Conley then. Correct. He had two years from August 2nd, 2004 to file suit. He did not do so. And that there was no fraudulent concealment or anything like that. Correct. Okay. Do you have any questions? Sir, the assurance to Konopic, don't worry, we're going to witness anyhow, doesn't have any effect. It would be wonderful if my assurances were black letter law or the assurances of other attorneys. That's a subjective opinion. And it has no effect. It's not fraud. It's not concealment. Mr. Konopic could see for himself that the witnesses that could prove that he disclosed his assets to Dolly Knopic were not called. Even if we could find for Konopic under the discovery rule, you would have had how much time to file the complaint? Under the discovery rule? Uh-huh. If the discovery rule applied, I would have had a year to file the complaint. From the time that Mr. Knopic, from the time that I began representing Mr. Knopic. And you didn't file that? I did not because of the occurrence rule. Well, because of why? Because of the occurrence rule. Again, I was only going to represent Mr. Knopic with respect to a claim for breach of contract. Why not under the tort theory? Did he just hire you for a breach of contract? He said file a negligence. When he retained me, no, he didn't tell me what to do, and clients don't tell their attorneys what claim to file. That's up to the attorney to decide. So you could have decided to file a tort? No. The statute had already passed, and I was not going to play, I was not going to take a chance. Cases are very expensive. I'm not going to pretend the discovery rule applies when it doesn't. There is no exception here. Well, I'm saying that if the discovery rule applied, you would have had time to file the suit, but you didn't, and therefore you could have been held liable for malpractice. You were, in fact, negligent, but you didn't do that. To be negligent, I would have had to have breached my duty. There is no duty because, as Judge Rambo concluded, the discovery rule does not apply. The discovery exception to the occurrence rule does not apply. Therefore, I was not negligent. Well, he won anyway. Indeed, at the time my relationship concluded with Mr. Nopik, he still had time to file a claim for legal malpractice in contract. He chose not to do so. Okay. Thank you. Any further questions? Thank you. You have rebuttal. Do you disagree with Mr. Downey on the proposition that in order for the discovery rule to apply, there has to be evidence of fraud or concealment? Yes, I do disagree with that. Fraudulent concealment is another way to toll the statute of limitations under Pennsylvania law. You have the discovery rule which tolls the statute of limitations until such time as a person discovers their injury, the cause of their injury, and when their injury occurred. So you don't need, as he suggested, fraud? You do not need fraud in order for that to happen. But you need fraudulent concealment, don't you? No. Are you equating fraud with fraudulent concealment? Fraudulent concealment and the discovery rule are two different ways to toll the statute of limitations. We've relied primarily upon the discovery rule. We've also pointed out, however, that Mr. Konopic was represented by Connolly from the date of the hearing through the date of the decision at least. During that time, he was assured by Connolly that there was no problem, that everything had been handled appropriately. Fraudulent concealment in Pennsylvania does not require actual fraud, nor even an intentional concealment, even an accidental misstatement of law. I have a question, too. He says that a legal malpractice case is different than other types of malpractice. He says that in legal malpractice, the statute of limitations begins to run from the occurrence of the malpractice, even if it hasn't had any consequences yet, and that the discovery rule won't postpone it until it means something, whereas in other contexts, not legal malpractice, the rule may be different. So he's putting, what do you think about that? He says legal malpractice is different. I don't think legal malpractice is different than any other form of malpractice. I don't think the state courts of Pennsylvania create any special rules for legal malpractice cases. I think these cases tend to be fact-specific. I think the Pennsylvania cases are confusing as to the doctrines of accrual and discovery rule and fraudulent conveyance, and they frequently intersperse these. I would like to respond to one thing that Mr. Downey said, however, and I would invite the Court's attention to page 523 of the joint appendix. In there is a letter from Mr. Downey to Conley's dated October 26, 2006. In that letter it says, Please place your carriers on notice of this potential claim. The statute of limitations on this matter in court is July 5, 2007, parentheses, the date of Judge Morrow's order in validating the property settlement agreement, close parentheses, period. Those are Mr. Downey's own words for when he was representing the plaintiffs. Apparently, he has a different view of the statute of limitations today, but I think at least at that point in time he was seeing the discovery rule as being applicable as well. I thank you for your time. Thank you.